UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EARL RAY GAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:11-CV-2998-G |
| LIEUTENANT DAMON JAMES, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' motion to dismiss (docket entry 32). For the reasons set forth below, this motion is granted in part and denied in part.

### I. BACKGROUND

#### A. Factual Background

This case deals with an altercation between police officers and a suspect at a police station. The plaintiff is Earl Ray Gay ("Gay"). Plaintiff's First Amended Complaint ("Complaint") ¶ 1 (docket entry 28). The defendants, Damon James

("James") and George Pappas ("Pappas") (collectively, "the defendants"),[1] are police officers for the City of Waxahachie, Texas ("the city" or "Waxahachie"). *Id*. ¶¶ 2, 3.

On July 16, 2010, Gay was arrested and transported to the Waxahachie Police Department ("WPD") for book-in. *Id*. ¶ 11. Maldonado, Owens, and Wilmot were Gay's arresting officers. Plaintiff's Response to Defendant James's and Pappas's Rule 7(a) Motion and Rule 12(b)(6) Motion ("Response") at 6 (docket entry 34). While in the book-in room, Gay was fingerprinted and handcuffed to a bench by Maldonado. Complaint ¶ 12. At that time, Owens, Wilmot, and Oliver were in the book-in room with Maldonado. *Id*. These officers observed that Gay had something in his mouth. *Id*. As a result, while he was still handcuffed to the bench, the officers took Gay to the ground. *Id*.

Pappas then entered the book-in room. *Id*. ¶ 14. While Gay was on the floor, Pappas "stood on Mr. Gay's abdomen and proceeded to jump up and down, thrusting his foot into Mr. Gay's abdomen repeatedly." *Id*.

---

[1] In addition to James and Pappas, the complaint names four other police officers as defendants: Elizabeth Maldonado ("Maldonaldo"), Barry Owens ("Owens"), Ryan Wilmot ("Wilmot"), and Joshua Oliver ("Oliver"). Complaint ¶¶ 4-7. These defendants have not yet been served with the plaintiff's complaint.

James then entered the book-in room, where he drive stunned[2] Gay with a taser three times. *Id*. ¶ 15. Pappas then administered a fourth drive stun. *Id*. ¶ 16. At that time, Gay spit out a small plastic bag which did not contain any drugs. *Id*.

Gay avers that he did not resist or fight the officers at any time during the assault. *Id*. ¶ 17. Gay was eventually taken to the Ellis County Detention Center, where he was denied admission due to an accelerated heartbeat. *Id*. ¶ 19. Gay was then taken to a local hospital, where he was admitted to the intensive care unit. *Id*.

According to the complaint, all of the officers filed incomplete "Use of Force Reports." *Id*. ¶¶ 20, 22. Waxahachie indefinitely suspended James and Pappas for their use of force on Gay. *Id*. ¶ 21. The city also gave Maldonado, Owens, Wilmot, and Oliver letters of reprimand for their role in the incident. *Id*. ¶ 22.

B. Procedural Background

On November 1, 2011, Gay filed this suit in which he asserts claims against the defendants under 42 U.S.C. § 1983 for (1) violations of his Fourth Amendment right to be free from unreasonable search and seizure, and (2) conspiracy to deprive him of his constitutional rights.[3] *Id*. ¶¶ 26-37.

---

[2]  According to the complaint, drive stun "refers to an administration of voltage by taking the cartridge off and applying pressure with two metal contacts." *Id*. ¶ 15.

[3]  The plaintiff's complaint also pled a state law claim of assault and battery. Complaint ¶¶ 38-40. In his response to the motion to dismiss, the plaintiff voluntarily dismissed this claim. Response at 8.

On February 29, 2012, James and Pappas filed this motion to dismiss. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). The court must "begin by

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 1949. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]" -- 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See *id.* at 1950, 1952.

II.  ANALYSIS

In their motion to dismiss, the defendants insist that the plaintiff's claims should be dismissed because they are entitled to qualified immunity, and because the plaintiff has failed to state a claim for which relief can be granted. After reviewing the pleadings and motions, the court concludes that the defendants are not entitled to

qualified immunity.  The court also concludes that the plaintiff has successfully pled an excessive force claim under the Fourth Amendment, but has failed to plead a claim of conspiracy.

### A.  Excessive Force Claim under the Fourth Amendment

#### 1. *Legal Standard*

Under 42 U.S.C. § 1983, a plaintiff can recover damages if he proves that the defendants deprived him of a constitutional right or privilege while the defendants were acting under color of state law.  In this case, the plaintiff claims that the defendants violated his rights under the Fourth Amendment to the U.S. Constitution. Complaint ¶¶ 29-30.

The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. CONST. amend IV.  The use of "excessive force" during a seizure is a violation of this constitutional provision.  See *Graham v. Connor*, 490 U.S. 386, 394 (1989).  To determine whether a given instance of force was "excessive," courts will apply the Fourth Amendment's "reasonableness" standard to the conduct.  *Id*. at 395.  In deciding whether or not certain conduct was reasonable, courts will balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Id*. at 396 (citations omitted).  This inquiry demands "careful attention to the facts and circumstances of each particular case," and "must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Furthermore, the inquiry is an objective one, without regard to the state actor's underlying intent or motivation. *Id*. at 397.

The Fourth Amendment only applies to "unreasonable searches and *seizures*." U.S. CONST. amend IV (emphasis added). Once the initial seizure of an arrest is over, and the individual becomes a "pretrial detainee," the Fourth Amendment no longer applies. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). Instead, the due process clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to a punishment. See *Graham*, 490 U.S. at 395 n.10 (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)). Under the Fourteenth Amendment, the "analysis is whether the force applied was in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Noel v. Webre*, 426 Fed. Appx. 247, 249-50 (5th Cir. 2011) (citing *Hudson v. McMillan*, 503 U.S. 1, 5-10 (1992)).

The case law does not provide a clear test as to when the protection of the Fourth Amendment ends and the protection of the Fourteenth Amendment begins. The Fifth Circuit has said that the Fourth Amendment does not operate

> *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.

*Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir.), *cert. denied*, 509 U.S. 905 (1993) (emphasis in original). For example, the Fifth Circuit has found that an individual was a pretrial detainee when he had been arrested, processed, and had spent several hours in jail before the police used the force in question. *Brothers v. Klevenhagen*, 28 F.3d 452, 456 (5th Cir.), *cert. denied*, 513 U.S. 1045 (1994). Moreover,

> courts in [the Fifth] Circuit have indicated that the point at which Constitutional protections for detainees shift from the Fourth Amendment to the Due Process Clause of the Fifth or Fourteenth Amendment is the point at which an individual is placed into secure custody in a jail cell.

*Ratliff v. City of Houston*, No. H-02-3809, 2008 WL 910205, at *2 (S.D. Tex. Apr. 3, 2008); see also *Brothers*, 28 F.3d at 457 ("Once an individual has been arrested and is placed into police custody, and surely after the arresting officer has transferred the individual to a jail cell, the individual becomes a pretrial detainee, protected against excessive force by the Due Process Clause.").

## 2. *Qualified Immunity*

The defendants argue that they are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982). Once the defendants have raised this defense, the burden shifts to the plaintiff to show that the individual defendants are not entitled to qualified immunity. See *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."), *cert. denied*, 537 U.S. 1232 (2003).

To overcome a motion to dismiss based on qualified immunity, the plaintiff must demonstrate two things. First, the plaintiff must have alleged facts sufficient to show that the individual defendants violated a constitutional right. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the plaintiff must show that the constitutional right was clearly established at the time of the defendants' alleged misconduct. *Id*. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id*. at 244 (internal quotations omitted). This court is permitted to consider the two prongs of the qualified immunity test in any order. *Id*. at 236.

3. *Application*

In this case, the plaintiff has pled sufficient facts to show that the defendants actions exceeded the standard bounds of reasonableness under the Fourth Amendment. According to the complaint, Gay was handcuffed to a bench while the defendants kicked and tased him. During this time, Gay was not resisting or fighting

the officers. While the officers likely believed that the small plastic bag in Gay's mouth contained drugs, the bag did not contain any controlled substance. As a result, the plaintiff's complaint sufficiently alleges that the defendants' use of force in this situation was unreasonable and excessive.

Furthermore, the Fourth Amendment, and not the Fourteenth Amendment, applied to the conduct in this case. First, the incidents of arrest were not completed, because Gay was still in the book-in room when the officers took action. While Gay had been fingerprinted by Maldonado, the plaintiff's complaint suggests that the book-in process was still ongoing. Second, Gay apparently was still in the custody of the arresting officers at the relevant time. While not alleged in his complaint, Gay's response to the motion to dismiss states that the arresting officers were the ones that had handcuffed him to the bench, and they were with him in the book-in room when the altercation occurred. Response at 6. Third, Gay had not been detained pending trial for any significant period of time, as he had not yet been placed in the secure custody of a jail cell.

The discussion above shows that the plaintiff has pled facts that, if proved, demonstrate that the defendants violated Gay's constitutional rights. Moreover, the contours of the Fourth Amendment right were clearly established when the defendants engaged in the relevant conduct. First, the Fourth Amendment's reasonableness standard was clearly established at least since 1989, when the

Supreme Court issued its decision in *Graham v. Connor*. Moreover, the Fifth Circuit's standard on the line between the Fourth and Fourteenth Amendment was established in 1993 with *Valencia v. Wiggins*. And while *Valencia* does not establish a bright line rule for where the Fourth Amendment's protection ends and the Fourteenth Amendment's protection begins, the discussion above demonstrates that the Fourth Amendment clearly applies in the context of this case.

### B.  Conspiracy Claim

Gay also maintains that the defendants conspired to deprive him of his Fourth Amendment constitutional rights. In particular, Gay claims that the defendants "acted in concert either by physically abusing Mr. Gay and using excessive force against him, or by observing the excessive force and failing to intervene to stop it." Complaint ¶ 35. Gay also claims that the defendants conspired to cover up the constitutional violations by filing false and incomplete police reports. *Id*.

To make out a claim of conspiracy, the plaintiff must show that defendants "entered into an agreement to commit an illegal act, and [the] plaintiff's constitutional rights must have been violated." *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008). Furthermore, a plaintiff must "allege specific facts to show an agreement." See *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829 (2004). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Id*.

In this case, Gay has not alleged any facts that indicate or suggest any sort of agreement among the defendant. The allegation that the defendants "acted in concert" is not enough to show an agreement. Instead the complaint must allege "specific facts" that show an agreement. *Id*. As a result, the plaintiff's conspiracy claim fails.

### III. CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss the plaintiff's excessive force claim is **DENIED**, and the defendants' motion to dismiss the plaintiff's conspiracy claim is **GRANTED**.

**SO ORDERED**.

May 30, 2012.

*[signature: A. Joe Fish]*

A. JOE FISH
**Senior United States District Judge**